# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID PRICE, ET AL.<br><br>v.<br><br>FOREMOST INDUSTRIES, INC., ET AL. | CIVIL ACTION<br><br>NO. 17-00145 |

## MEMORANDUM RE: MOTION TO STRIKE & MOTION TO DISMISS

Baylson, J.                                                                                          December 22, 2017

## I. Introduction

At issue in this diversity case is whether this Court should grant two motions filed by Defendants Daniel Gordon and GLD Holdings, LLC ("Moving Defendants"): (1) a motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6); and (2) a motion to strike, pursuant to Fed. R. Civ. P. 12(f).

## II. Relevant Factual[1] and Procedural History

According to their Amended Complaint ("Am. Compl.," ECF 11), Plaintiffs David and Maria Price began to meet with representatives of Defendant Foremost Industries, Inc. ("Foremost") in early 2015 to arrange for Foremost's development and construction of a modular home for Plaintiffs. (Am. Compl. ¶ 7). In April, 2015, Plaintiffs found a parcel of land in Middletown, Virginia on which the development and construction would proceed. (Id. ¶ 8) During this time period, Plaintiffs were verbally quoted a three-month timeframe for construction. (Id. ¶ 9).

---

[1] In considering a motion to dismiss under Rule 12(b)(6), "we accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." Warren Gen. Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011) (internal quotation marks and citations omitted).

In late May, 2015, Defendant Daniel Gordon, "through his majority shareholder status in, and acting through [Defendant] GLD Foremost Holdings, caused GLD Foremost to purchase the entirety of stocks of Foremost Industries." (Id. ¶ 10). Plaintiff alleges "upon information and belief" that this purchase pertained to all assets and liabilities of Foremost, making GLD Foremost Holdings ("GLD") a "successor in interest" of Foremost. (Id. ¶ 11).

In September, 2015, Plaintiffs entered into a sales agreement with Foremost for the design, development, and construction of a modular home for the purchase price of $175,690.07. (Id. ¶ 12). They allege, again upon information and belief, that in September, 2015, Defendants were already taking steps to cease operations. (Id. ¶ 15). In December, 2015, Plaintiffs secured a construction loan from their bank, which was a contractual condition precedent to the design and construction of the modular home. (Id. ¶ 16). Plaintiffs then paid a series of down-payments, but experienced months of unexcused delays. (Id. ¶¶ 17, 20, 22, 25–26). This culminated in Plaintiffs' never receiving the home for which they entered into a contract. (Id. ¶ 28). In fact, Plaintiffs allege upon information and belief that "construction of the home was never even commenced." (Id.).

In September, 2016, Plaintiffs commenced this action by filing a Writ of Summons in the Court of Common Pleas, Philadelphia County. In December, 2016, Plaintiffs filed a Complaint, and in January, 2017, the case was removed to this Court. (ECF 1). Defendants Gordon and GLD filed a motion to dismiss the Complaint on January 26, 2017, after which Plaintiffs decided to file an Amended Complaint. (ECF 10). Plaintiffs filed an Amended Complaint in this Court on September 6, 2017 (ECF 11).

The Amended Complaint alleges five causes of action: (I) breach of contract against all Defendants; (II) unjust enrichment against all Defendants; (III) violation of Pennsylvania's

Unfair Trade Practices Consumer Protection Law ("UTPCPL") against all Defendants; (IV) fraudulent misrepresentation against all Defendants; and (V) piercing of the corporate veil against Defendant Gordon.

Presently before the Court are Moving Defendants' Motion to Dismiss Plaintiffs' Amended Complaint and Motion to Strike Paragraphs 5, 6, 10, 11, 14, and 15 of Plaintiffs' Amended Complaint (ECF 13). Plaintiffs filed a Response on October 10, 2017 (ECF 15), GLD and Gordon filed a Reply on October 27, 2017 (ECF 16), and Plaintiffs filed a Surreply (after the Court granted their Motion to File a Surreply) on November 19, 2017 (ECF 19).

### III. Summary of Parties' Contentions

The Motion to Dismiss and Strike contains eight primary contentions:

(1) Defendants GLD and Gordon cannot be liable for breach of contract and unjust enrichment (Counts I and II) because they were not parties to the modular home sales agreement that Plaintiffs allege was breached.

(2) Defendants GLD and Gordon cannot be liable for breach of contract and unjust enrichment (Counts I and II) by virtue of an agency relationship because the Amended Complaint does not adequately plead the elements of agency to connect the actual party to the agreement (Foremost) with its purported agents (Gordon and GLD).

(3) Defendants GLD and Gordon cannot be liable for the fraud claims (Counts III and IV) because none of the purported misrepresentations by the alleged "sales representatives" are attributable to them.

(4) Defendants GLD and Gordon cannot be liable for the fraud claims (Counts III and IV) because Plaintiffs have no alleged that the representations were made falsely, made with knowledge of their falsity (or recklessness as to whether the representations were true or false), or made with the intent of misleading Plaintiffs into relying on them.

(5) Defendants GLD and Gordon cannot be liable for false advertising under UTPCPL (Count IV) because representations by individual employees or agents do not qualify as advertising.

(6) Defendant Gordon cannot be liable under a "veil-piercing" theory (Count V) because Plaintiffs have not adequately alleged he was "in control" of Foremost.

(7) Paragraphs 5, 6, 10, and 11 of the Amended Complaint should be stricken because Plaintiffs have not presented any evidence that Defendant Gordon served as a principal, employee, or agent of, or had any ownership interest in, GLD or Foremost.

(8) Paragraphs 14 and 15 of the Amended Complaint should be stricken because they contain unsupported and unrelated allegations from other pending litigations.

Plaintiffs' Response opposes the above contentions as follows:

(1) The breach of contract claim (Count I) is adequately pled because, although Defendants GLD and Gordon were not parties to the sales agreement, they assumed the obligation to perform the contract through their full acquisition of the actual party to the agreement, i.e., Foremost.

(2) The unjust enrichment claim (Count II) is adequately pled because, by acquiring Foremost, Defendants GLD and Gordon became the parties who benefitted from Plaintiffs' down-payments.

(3) The UTPCPL claim (Count III) is adequately pled because: (A) a false advertising claim can be premised on an "other agency" relationship; (B) the facts show the plausibility that Defendants GLD and Gordon were the only parties in full ownership and control of Foremost; and (C) the "catchall" provision of the UTPCPL captures Plaintiffs' claim by prohibiting actions that have a mere likelihood or reasonable possibility of misleading or confusing the consumer.

(4) The fraudulent misrepresentation claim (Count IV) is adequately pled because the sales representatives that misrepresented facts were agents of Defendants GLD and Gordon by virtue of GLD's acquisition of Foremost.

(5) The veil piercing claim (Count V) is adequately pled because Plaintiffs allege that Defendant Gordon executed the stock purchase agreement on behalf of GLD, an entity that bears the initials of Defendant Gordon in reverse order.

(6) Paragraphs 5, 6, 10, and 11 of the Amendment Complaint should not be stricken because they reflect allegations arising logically from the fact that Defendant Gordon signed the agreement memorializing GLD's acquisition of Foremost.

(7) Paragraphs 14 and 15 of the Amended Complaint should not be stricken because the separate litigations mentioned therein are matters of public record.

Defendants GLD and Gordon's Reply does not make any legal assertions. Instead, an affidavit from Daniel Gordon is attached, disputing several factual allegations in the Amended Complaint.

Plaintiffs' Surreply asserts that this Court should not consider Defendants' Reply when ruling on the present Rule 12(b)(6) Motion to Dismiss.

## IV. Subject Matter Jurisdiction

Though not raised by either party, this Court has an obligation to examine its own subject matter jurisdiction, and may do so *sua sponte*. Nesbit v. Gears Unlimited, Inc., 347 F.3d 72, 76 (3d Cir. 2003). Here, Moving Defendants removed from the Court of Common Pleas for Philadelphia County, asserting Diversity Jurisdiction under 28 U.S.C. § 1332(a). To invoke diversity jurisdiction, a controversy must be between citizens of different states and the amount in controversy must exceed $75,000. 28 U.S.C. § 1332(a). There is some question here as to whether the amount in controversy exceeds the jurisdictional amount, as the Notice of Removal states only that alleged damages equal "over $50,000."

Courts discern the amount in controversy for jurisdictional purposes by consulting the face of the complaint and accepting plaintiff's good faith allegations. Frederico v. Home Depot, 507 F.3d. 188, 194 (3d Cir. 2007); Grand Union Supermarkets of the V.I., Inc. v. H.E. Lockhart Mgmt., 316 F.3d 408, 410 (3d Cir. 2003). In removal cases, the analysis begins with an examination of the complaint filed in state court – if that complaint is silent or ambiguous, courts look to the notice of removal. Frederico, 507 F.3d at 196-97. Where a case has been removed, and the complaint does not specifically aver that the amount sought by Plaintiffs is less than the jurisdictional minimum, the case must be remanded only if it appears to a legal certainty that the plaintiff cannot recover the jurisdictional amount Id. at 197.

5

Plaintiffs' Complaint states $54,669.97 in specific damages, references additional injury suffered, and does not expressly limit the amount in controversy to less than $75,000. Specifically, for their breach of contract claim, Plaintiffs cite "numerous financial expenditures made in anticipation of receiving a home . . . including opportunity cost, time value of money, and loan interest." Compl. ¶ 37. In addition, Plaintiffs' UTPCPL claims carry the possibility of treble damages. ECF 1, at 4; see also 73 Pa. Cons. Stat. § 209-9.2. As it is not a legal certainty that Plaintiffs cannot recover $75,000 or more, the jurisdictional requirement has been met.

## V. Motion to Strike

### A. Legal Standard for Motion to Strike

Defendants bring a Motion to Strike portions of Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(f). Rule 12(f) states, "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

"The standard for striking a complaint or a portion of it is strict, and 'only allegations that are so unrelated to the plaintiffs' claims as to be unworthy of any consideration should be stricken.'" Steak Umm Co., LLC v. Steak 'Em Up, Inc., No. 09-2857, 2009 WL 3540786, at *2 (E.D. Pa. Oct. 29, 2009), citing Johnson v. Anhorn, 334 F.Supp.2d 802, 809 (E.D. Pa. 2004). "The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." McInerney v. Moyer Lumber and Hardware, Inc., 244 F. Supp. 2d 393, 402 (E.D. Pa. 2002). Although "[a] court possesses considerable discretion in disposing of a motion to strike under Rule 12(f)," such motions are "not favored and usually will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case." River Road Dev. Corp. v. Carlson Corp., No. 89-7037, 1990 WL 69085, at *3 (E.D. Pa. May 23, 1990).

Motions to strike are to be decided "on the basis of the pleadings alone." N. Penn Transfer, Inc. v. Victaulic Co. of Am., 859 F.Supp. 154, 159 (E.D. Pa. 1994) (citations omitted). Striking a pleading or a portion of a pleading "is a drastic remedy to be resorted to only when required for the purposes of justice." DeLa Cruz v. Piccari Press, 521 F. Supp.2d 424, 428 (E.D. Pa. 2007) (quotations omitted). See also Giuliani v. Polysciences, Inc., No. CV 17-1705, 2017 WL 3226002, at *3 (E.D. Pa. July 31, 2017).

### B. Discussion of Motion to Strike

#### 1. Motion to Strike Paragraphs 5, 6, 10, 11

Moving Defendants' first contention is that Paragraphs 5, 6, 10, and 11 of the Amended Complaint should be stricken.

Paragraphs 5, 6, 10, and 11 of the Amended Complaint are as follows:

> 5. At all times relevant to this Complaint Defendant Daniel Gordon was an owner, principal, agent and/or employee of Defendant GLD Foremost Holdings and/or Foremost Industries who was acting within the scope of his authority and course of his agency
>
> 6. At all times relevant to this Complaint Defendant GLD Foremost Holdings and/or Defendant Foremost Industries acted or failed to act by and through Defendant Daniel Gordon.
>
> 10. On or around May 29, 2015 Daniel Gordon, through his majority shareholder status in, and acting through GLD Foremost Holdings, caused GLD Foremost to purchase the entirety of stocks of Foremost Industries. . . .
>
> 11. Upon information and belief the purchase purported to pertain to all assets and liabilities of Foremost Industries, making GLD Foremost Holdings a "successor in interest" of Foremost Industries.

Moving Defendants base their Motion to Strike on the fact that Plaintiffs have not presented any evidence that Defendant Gordon served as a principal, employee, or agent of, or

had any ownership interest in, GLD or Foremost. Notably, Moving Defendants do not claim that they are prejudiced by the four paragraphs, River Road, 1990 WL 69085, at *3, nor do they contend that the paragraphs constitute "redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Instead, Moving Defendants rely on a lack of evidence presented, which is not a valid ground for the heavily-disfavored mechanism of striking portions of a complaint. DeLa Cruz, 521 F. Supp.2d at 428. Paragraphs 5, 6, 10, and 11 will not be stricken.

### 2. Motion to Strike Paragraphs 14 and 15

Moving Defendants also contend that Paragraphs 14 and 15 of the Amended Complaint should be stricken because they contain unsupported and unrelated allegations from other pending litigations.

Paragraphs 14 and 15 of the Amended Complaint are as follows:

> 14. Judicial notice may be taken that the May 29, 2015 stock purchase has become the subject of separate litigation in the matters of Michael v. GLD Foremost Holdings LLC et al (1:2015-cv-02230) and GLD Foremost Holdings LLC v. Michael et al (1:2015-cv-02234), in which there are allegations from the prior owner that Gordon began auctioning off Foremost equipment and dismantling operations immediately upon acquisition.
>
> 15. Upon information and belief, on the date that Plaintiffs entered into the contract for the construction of their primary residence, steps were already being taken by Defendants to cease operations.

Defendants' claim that Paragraphs 14 and 15 are unrelated necessarily fails.

First, Paragraph 15 is directly related to Plaintiffs' fraud claims and the question of punitive damages: If Defendants were already taking steps to cease operations at the time of the modular home sales agreement, this would raise serious questions about Defendants' intent in entering into the contract.[2]

---

[2] This assumes, for present purposes, that Plaintiffs' allegation is correct that GLD and Gordon stood to gain from the agreement.

Second, Paragraph 14 is also not wholly irrelevant, and Plaintiffs have not committed any error in noting the presence of related litigation. If GLD or Gordon dismantled operations at the time that GLD purchased Foremost, this would bolster Plaintiffs' fraud claims and provide support for the imposition of punitive damages, for the same reasons detailed above: it would suggest that Defendants knew at the time of the modular home sales agreement that the home would never be completed. Moreover, Moving Defendants again fail to demonstrate (or even assert) that they are prejudiced by the inclusion of the paragraphs. River Road, 1990 WL 69085, at *3.

The motion to strike is therefore denied.

## VI. Motion to Dismiss

### A. Legal Standard for Motion to Dismiss

In considering a motion to dismiss under Rule 12(b)(6), "we accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." Warren Gen. Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011) (internal quotation marks and citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its fact.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, (2007)).

On a motion to dismiss under Rule 12(b)(6), this Court may consider the allegations contained in the complaint, exhibits attached to the complaint, and matters of public record. Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir.1993). Among the public records a court may examine in order to resolve a motion to dismiss is a judicial proceeding from a different court or case. S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd., 181 F.3d 410, 426 (3d Cir. 1999). Taking judicial notice of the existence of other proceedings does not convert a motion to dismiss into a motion for summary

judgment as long as the court does not take judicial notice of those proceedings to find facts. S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd., 181 F.3d 410, 427 (3d Cir. 1999) ("It has been suggested that the appropriate analogy is the hearsay rule, which allows an out-of-court statement to be admitted into evidence for purposes other than establishing the truth of the statement."); Global Network Comm., Inc. v. City of New York, 458 F.3d 150, 157 (2d Cir. 2006) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings").

All allegations of fraud (i.e., Counts III and IV of the Amended Complaint) must meet Fed. R. Civ. P. 9(b)'s heightened pleading standard (the "particularity" requirement). Rule 9(b)'s heightened pleading standard not only gives defendants notice of the claims against them, but also provides increased measure for protection of their reputation and reduces the number of frivolous lawsuits brought solely to extract settlements. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1418 (3d Cir.1997).

Rule 9(b) may be satisfied by describing the circumstances of the alleged fraud with precise allegations of date, time, or place, or by using some means of injecting precision and some measure of substantiation into the allegations of fraud. Bd. of Trs. of Teamsters Local 863 Pension Fund v. Foodtown, Inc., 296 F.3d 164, 172 n. 10 (3d Cir. 2002). Stated another way, the plaintiff must plead the who, what, when, where, and how of the fraud. Institutional Investors Grp. v. Avaya, Inc., 564 F.3d 242, 253 (3d Cir. 2009); see Bonavitacola Elec. Constr. v. Boro Developers, Inc., No, 01–5508, 2003 WL 329145, at *6 (E.D. Pa. Feb.12, 2003) (Baylson, J.).

"[H]owever, courts should be sensitive to the fact that application of [Rule 9(b)] prior to discovery may permit sophisticated defrauders to successfully conceal the details of their fraud.

10

Accordingly, the normally rigorous particularity rule has been relaxed somewhat where the factual information is peculiarly within the defendant's knowledge or control." In re Burlington, 114 F.3d at 1418 (citations and quotation marks omitted). Thus, plaintiffs may plead certain factual allegations based "upon information and belief" but must allege that the necessary information lies within the defendant's control, and their allegations must be accompanied by a statement offsets upon which the allegations are based. In re Craftmatic Sec. Litig., 890 F.2d 628, 645 (3d Cir. 1989). Boilerplate and conclusory allegations will not suffice. In re Burlington, 114 F.3d at 1418.

### B. Discussion of Motion to Dismiss

#### 1. Choice of Law

Though neither party briefs this issue, there is some question as to what law applies to Plaintiffs' breach of contract claim, as there is no choice-of-law clause specified in the contract. For a federal court sitting in diversity, the forum state's choice-of-law rules determine which state's substantive law to apply. Budget Rent-A-Car Sys., Inc. v. Chappell, 407 F.3d 166, 169-170 (3d Cir. 2005). In Pennsylvania, to address a potential conflict of laws dispute is whether the parties explicitly or implicitly have chosen the relevant law. Assicurazioni Generali, S.P.A. v. Clover, 195 F.3d 161, 164 (3d Cir. 1999). Here, the parties appear to implicitly agree that Pennsylvania law applies, given that they cite no other state law in any of their filings. See Melikian v. SZR Haverford, AL, LLC, No. 12-1401, 2012 WL 2343389, at *3 (E.D. Pa. June 19, 2012) (Baylson, J.). As such, this Court will apply Pennsylvania contract law.

#### 2. Breach of Contract (Count I) and Piercing Corporate Veil (Count V)

To state a claim for breach of contract, a claimant need only allege: (1) the existence of a contract, including its essential terms; (2) a breach of duty imposed by the contract; and (3) damages from the breach. Ware v. Rodale Press, Inc., 322 F.3d 218, 225 (3d Cir. 2003) (quoting

11

CoreStates Bank, N.A. v. Cutillo, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)) (internal punctuation omitted).

Moving Defendants do not contest the validity of the contract, that it was breached, or that damages to Plaintiffs resulted from the breach. Instead, they claim that they are not liable for any breach because: (1) they were not parties to the modular home sales agreement; and (2) they were not principals of Foremost, the actual party to the agreement.

Plaintiffs contend that at the time Plaintiffs entered into the sales agreement with Foremost, GLD had already purchased Foremost, thereby making GLD a "successor in interest" of Foremost. According to Plaintiffs, Defendant Gordon is the majority shareholder of GLD. As a result, Plaintiffs assert that both GLD and Gordon were obligated to perform under the agreement.

As a general proposition, a party to a contract may not recover for breach of contract from an entity who is not a party to the contract. Moreover, the mere fact that Defendant GLD allegedly owns all of the stock of Foremost does not by itself make Defendant GLD liable for Defendant Foremost's contracts. See Phoenix Canada Oil Co. v. Texaco, Inc., 842 F.2d 1466, 1477 (3d Cir. 1988) ("One corporation whose shares are owned by a second corporation does not, by that fact alone, become the agent of the second company.").

Although a parent corporation is generally not liable for the actions of its subsidiary, United States v. Bestfoods, 524 U.S. 51, 61 (1998), a court may pierce the corporate veil and hold a parent liable for a subsidiary's breach of contract to prevent a fraud. There is a strong presumption in Pennsylvania against piercing the corporate veil. Wedner v. Unemployment Board, 449 Pa. 460, 464 (1972) ("[A]ny court must start from the general rule that the corporate entity should be recognized and upheld, unless specific, unusual circumstances call for an

exception. . . . Care should be taken on all occasions to avoid making the entire theory of corporate entity useless. Zubik v. Zubik, 384 F.2d 267, 273 (3d Cir. 1967)"). Also, the general rule is that a corporation shall be regarded as an independent entity even if its stock is owned entirely by one person or entity. College Watercolor Group, Inc. v. William H. Newbauer, Inc., 468 Pa. 103, 117 (1976).

To avoid the abuse of the corporate form, a court may "pierce the corporate veil," whereby it disregards the existence and protections of the corporate form and holds a corporation's shareholder liable for the corporation's debts. Kaplan v. First Options of Chicago, Inc., 19 F.3d 1503, 1520-21 (3d Cir. 1994). Courts consider the following factors in weighing whether to pierce the corporate veil: (1) gross undercapitalization, (2) failure to observe corporate formalities, (3) nonpayment of dividends, (4) insolvency of the debtor corporation, (5) siphoning of funds from the debtor corporation by the dominant stockholder, (6) nonfunctioning of officers and directors, (7) absence of corporate records, and (8) whether the corporation is merely a facade for the operations of the dominant stockholder. Pearson v. Component Tech. Corp., 247 F.3d 471, 484-85 (3d Cir. 2001). In the parent-subsidiary context, courts will pierce the corporate veil when "the parent so dominated the subsidiary that it had no separate existence." Id. at 484.

The, "mere ownership" of a subsidiary does not justify the imposition of liability on a parent company. Id.; cf. Clientron Corp. v. Devon IT, Inc., 154 F. Supp. 3d 132, 139 (E.D. Pa. 2015) (Baylson, J.) (this court holding that to pierce the corporate veil, a plaintiff must show that the controlled corporation acted as "puppet" of the owner or shareholder). Indeed, the party seeking to pierce the corporate veil must show that the parent has interfered with the subsidiary's operations in a way that surpasses the control exercised as an incident of ownership. Id. at 487;

see also CMF Assocs., LLC v. Scout Media, Inc., No. 15-1250, 2015 WL 2125131, at *3 (E.D. Pa. May 6, 2015) (granting parent company's motion to dismiss breach of contract claim where it was not a party to subsidiary's contract and plaintiff alleged only that the parent owned the subsidiary and no facts sufficient to support any of the Pearson factors); Zarichny v. Complete Payment Recovery Servs., Inc., 80 F. Supp. 3d 610, 619 (E.D. Pa. 2015) (same in TCPA case); Richardson v. CSS Indus., Inc., No. 08-3900, 2009 WL 2230761, at *3 (E.D. Pa. July 27, 2009) (same in employee benefits case).

Plaintiffs fail to allege any facts justifying veil-piercing, and instead lean on GLD's ownership of Foremost. Like in CMF, Plaintiffs do not allege any facts supporting Pearson's eight veil-piercing factors. Further, Plaintiffs do not allege that GLD exercised any control over Foremost. As such, the breach of contract claim against GLD will be dismissed without prejudice.

Plaintiffs also seek to impose liability on Defendant Gordon.

Their first contention is that Defendant Gordon should be liable because he allegedly executed the stock purchase agreement on behalf of Foremost. If this Court imposed liability on that basis alone, every CEO who signs a contract on behalf of his company would be liable for that company's debts. This cannot be the proper result.

Their second contention is that Defendant Gordon can be liable under a theory of veil-piercing. However, Plaintiffs do not allege that Gordon owns any of Foremost himself—they allege only that Gordon formed GLD, and GLD purchased Foremost. Therefore, to hold Gordon liable, it would require two levels of corporate veil-piercing. As outlined above, Plaintiffs fail to allege sufficient facts to support even piercing the corporate veil as to GLD. Consequently, Plaintiffs' breach of contract claim against Gordon must also fail.

### 3. Unjust Enrichment (Count II)

To state a claim for unjust enrichment, a plaintiff must allege: "(1) a benefit conferred on the defendant by the plaintiff; (2) appreciation of the benefit by the defendant; and (3) the defendant's acceptance and retention of the benefit 'under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value.'" <u>Giordano v. Claudio</u>, 714 F. Supp. 2d 508, 530 (E.D. Pa. 2010) (quoting <u>Filippi v. City of Erie</u>, 968 A.2d 239, 242 (Pa. Commw. Ct. 2009)).

Plaintiffs' Amended Complaint is inadequate as to the first element. Plaintiffs allege that "[o]n December 11, 2015, David Price hand delivered the initial 10% down payment of $17.569.00 and executed a partial lien waiver." Plaintiffs also allege that "[o]n May 2, 2016 Plaintiffs' bank released their second down payment of $37,100.97 which David Price hand delivered [sic] that same day." Both allegations are devoid of a crucial detail, which is required as part of the first element of an unjust enrichment claim, namely, <u>to whom payment was made</u> (i.e., who has the money). Without this necessary information, the Court is left unable to determine whether there is sufficient information to allege that "a benefit [was] conferred on the defendant."

Later in the Amended Complaint, Plaintiffs allege that "Plaintiffs fulfilled their contractual obligations, inclusive of the payment to defendants of over $54.000.00 in down payments." It is unclear which of the three Defendants was actually paid by Plaintiffs, and how Plaintiffs conclude that all three Defendants received the payment. Thus, the Amended Complaint also fails as to the second and third elements of unjust enrichment.

### 4. Violation of the UTPCPL (Count III)

Plaintiffs base their UTPCPL claim on the statute's "catchall" provision, 73 Pa. Stat. § 201-2(4)(xxi), which requires Plaintiffs to plead the elements of common law fraud or otherwise

15

allege deceptive conduct, subject to Fed. R. Civ. P. 9(b)'s particularity requirement. Hunt v. United States Tobacco Co., 538 F.3d 217, 219 (3d Cir. 2008). The elements of common law fraud are:

> "(1) misrepresentation of a material fact;
>
> (2) scienter;
>
> (3) intention by the declarant to induce action;
>
> (4) justifiable reliance by the party defrauded upon the misrepresentation; and
>
> (5) damage to the party defrauded as a proximate result."

Id. at 225 n. 13. Plaintiffs alleging deceptive conduct,

> [f]irst . . . must allege facts showing a deceptive act, that is conduct that is likely to deceive a consumer acting reasonably under similar circumstances. Next, the plaintiff must allege justifiable reliance, in other words that he justifiably engaged in a detrimental activity because of the defendants' misrepresentation or deceptive conduct. Finally, the plaintiff must allege that this justifiable reliance caused ascertainable loss.

Seldon v. Home Loan Serv., Inc., 647 F.Supp.2d 451, 470 (E.D.Pa.2009) (internal quotations and citations omitted).[3]

False advertising is among the "deceptive acts" prohibited under the UTPCPL. See 73 Pa. Cons. Stat. § 201-2(4)(v) & (ix). In order to state a claim for false advertising under the UTPCPL, a plaintiff must allege that (1) "a defendant's representation is false"; (2) "it actually deceives or has a tendency to deceive"; and (3) "the representation is likely to make a difference in the purchasing decision." Seldon v. Home Loan Servs., Inc., 647 F. Supp. 2d 451, 466 (quoting Fay v. Erie Ins. Grp., 723 A.2d 712, 714 (Pa. Super. 1999)).

---

[3] A plaintiff alleging deceptive conduct may proceed without satisfying the particularity requirement of Federal Rule of Civil Procedure 9(b). Seldon v. Home Loan Serv., Inc., 647 F.Supp.2d 451, 469–70 (E.D.Pa.2009).

Plaintiffs allege several misrepresentations in their Amended Complaint, including the following:

> 9. During Plaintiffs' meetings with their initial sales representative they were verbally quoted a timeframe of approximately three months for a home to be constructed.
>
> 18. As of December 2015 Plaintiffs continued to be quoted a timeframe of three months for delivery of their new home.
>
> 22. Despite the promise of a three week turnaround for final plans, the plans were only ready for review on March 14, 2016.
>
> 44. From the onset of the transaction(s) at issue herein, Defendants misrepresented to Plaintiffs, either negligently or willfully, the status of the project, the timing of its performance, as well as every material portion of its duty to perform under the contract.

Plaintiffs' allegations as to Moving Defendants' misrepresentations are devoid of the details that Rule 9(b) requires. To the extent Plaintiffs rely on the sales agreement itself for their claim, that claim is duplicative of the breach of contract claim and independently subject to dismissal for the same reasons as the breach of contract claim. To the extent that Plaintiffs rely on allegations that unnamed sales representatives verbally provided quotes that their modular home would be completed in "approximately three months," the claim lacks the requisite the who, what, when, where, and how of the alleged fraud. Institutional Investors, 564 F.3d at 253.

As for Plaintiffs' false advertising claim, it too is insufficient. Representations made by individual employees or agents of defendants do not qualify as advertising and cannot constitute a violation of the UTPCPL's false advertising prohibition. See Seldon, 647 F. Supp. 2d at 466 (dismissing plaintiff's UTPCPL false advertising against defendant loan servicing company for statements made by its representatives, reasoning that since those statements were made by "individual employees or agents of defendants," they did not qualify as advertising).

In addition, Plaintiffs' Complaint fails to allege a specific representation that (a) can be imputable to Moving Defendants and (b) would also have made a difference in their purchasing decision—the choice to contract with Foremost in the first place.[4]

### 5. Fraudulent Misrepresentation (Count IV)

Under Pennsylvania law, a fraudulent misrepresentation claim has six elements:

(1) a representation;

(2) which is material to the transaction at hand;

(3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false;

(4) with the intent of misleading another into relying on it;

(5) justifiable reliance on the misrepresentation; and

(6) the resulting injury was proximately caused by the reliance.

Overall v. Univ. of Pa., 412 F.3d 492, 498 (3d Cir. 2005).

Plaintiffs fraudulent misrepresentation claim fails for the same reasons that the UTPCPL claim fails. Rule 9(b) requires particularized allegations of fraud that are notably absent in the Complaint.

---

[4] While not raised by the parties, there is also a question as to whether Plaintiffs' UTPCPL claims are barred by either the economic loss or "gist of the action doctrine." See Werwinski v. Ford Motor Co., 286 F.3d 661, at 676, 680-81 (3d Cir. 2002) (holding that the economic loss doctrine applies to UTPCPL claims). The economic loss doctrine (and its closely related cousin, the "gist of the action" doctrine) bars claims under the UTPCPL that (1) stem from an underlying breach of contract ("intrinsic") and (2) are not "extraneous" (or "extrinsic") to that contract. Murphy v. State Farm Mut. Auto. Ins. Co., 2016 WL 4917597, at *5 (E.D. Pa. 2016). Representations concerning a party's performance under a contract or allegations that a defendant has not fulfilled contractual obligations are deemed "intrinsic" and will be barred by the doctrine. Whitaker v. Herr Foods, Inc., 198 F. Supp. 3d 476, 490 (E.D. Pa. 2016). It appears as if the misrepresentations alleged in Plaintiffs' Complaint have to do solely with Foremost's contractual obligations and failure to perform. However, since the parties have not raised this issue nor briefed it in detail, the Court refrains from providing a full ruling or analysis.

## VII. Conclusion

For the reasons stated above, the Motion to Dismiss is GRANTED without prejudice, and the Motion to Strike is DENIED.

An appropriate Order follows.

O:\CIVIL 17\17-145 Price v Foremost\Memo - MTD and Motion to Strike.docx