# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| DAVID PRICE, ET AL. | CIVIL ACTION |
|---|---|
| v. | NO. 17-00145 |
| FOREMOST INDUSTRIES, INC., ET AL. | |

## MEMORANDUM RE: MOTION TO DISMISS

**Baylson, J.**  April 26, 2017

## I.   Introduction

At issue in this diversity case is whether this Court should grant a Rule 12(b)(6) motion to dismiss filed by GLD Foremost Industries, LLC ("GLD").

## II.   Relevant Factual[1] and Procedural History

According to their Second Amended Complaint ("SAC," ECF 22), Plaintiffs David and Maria Price began to meet with representatives of Defendant Foremost Industries, Inc. ("Foremost") in early 2015 to arrange for Foremost's development and construction of a modular home for Plaintiffs. (Am. Compl. ¶ 4). In April, 2015, Plaintiffs found a parcel of land in Middletown, Virginia on which the development and construction would proceed. (Id. ¶ 5) During this time period, Plaintiffs were verbally quoted a three-month timeframe for construction. (Id. ¶ 6).

In late May, 2015, a stock purchase agreement was executed, which transferred the entirety of Foremost stock to GLD. (Id. ¶ 7).

---

[1] In considering a motion to dismiss under Rule 12(b)(6), "we accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." Warren Gen. Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011) (internal quotation marks and citations omitted).

In September, 2015, Plaintiffs entered into a sales agreement with Foremost for the design, development, and construction of a modular home for the purchase price of $175,690.07. (Id. ¶ 9). They allege, upon information and belief, that in September, 2015, GLD was already taking steps to cease operations of Foremost. (Id. ¶ 12). In December, 2015, Plaintiffs secured a construction loan from their bank, which was a contractual condition precedent to the design and construction of the modular home. (Id. ¶ 13). Plaintiffs then paid a series of down-payments, but experienced months of unexcused delays. (Id. ¶¶ 14, 17, 22-23). This culminated in Plaintiffs' never receiving the home for which they entered into a contract. (Id. ¶ 25). In fact, Plaintiffs allege upon information and belief that "construction of the home was never even commenced." (Id.).

In September, 2016, Plaintiffs commenced this action by filing a Writ of Summons in the Court of Common Pleas, Philadelphia County. In December, 2016, Plaintiffs filed a Complaint, and in January, 2017, the case was removed to this Court. (ECF 1). Defendants Gordon and GLD filed a motion to dismiss the Complaint on January 26, 2017, after which Plaintiffs decided to file an Amended Complaint. (ECF 10). Plaintiffs filed an Amended Complaint in this Court on September 6, 2017 (ECF 11). On December 22, 2017, the Court granted Defendants' First Rule 12(b)(6) Motion to Dismiss, without prejudice and with leave to file a second amended complaint within 14 days. (ECF 21).[2] Plaintiffs filed their Second Amended Complaint ("SAC") on January 9, 2018. (ECF 22).

The SAC alleges three causes of action: (I) breach of contract against all Defendants; (II) unjust enrichment against all Defendants; and (III) violation of Pennsylvania's Unfair Trade Practices Consumer Protection Law ("UTPCPL") against all Defendants.

---

[2] The Court's Order is dated December 22, 2017, but the Order was not entered until December 26, 2017.

Presently before the Court is Defendant GLD's Second Rule 12(b)(6) Motion to Dismiss. For the reasons that follow, it will be GRANTED WITH PREJUDICE.

### III. Comparison of the Amended Complaint and SAC

The Amended Complaint, which this Court dismissed without prejudice, and the SAC, which the Court is presently tasked with considering, are nearly identical in all material respects. One change is that Daniel Gordon has been removed as a Defendant and all references to him have been removed in the SAC. Thus, paragraphs 4-6 were removed. Plaintiffs also slightly modified paragraphs 10-13 from the Amended Complaint, but in only minor ways. Notably, just like the Amended Complaint, the SAC is entirely pled "upon information and belief." (SAC, at page 2).[3]

### IV. Legal Standard

In considering a motion to dismiss under Rule 12(b)(6), "we accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." Warren Gen. Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011) (internal quotation marks and citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its fact.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, (2007)).

All allegations of fraud (i.e., Count III) must meet Fed. R. Civ. P. 9(b)'s heightened pleading standard (the "particularity" requirement). Rule 9(b)'s heightened pleading standard not only gives defendants notice of the claims against them, but also provides increased measure for protection of their reputation and reduces the number of frivolous lawsuits brought solely to

---

[3] Yet again, there are no page numbers on Plaintiffs' pleading. Page 2 refers to the second page of ECF 22 (the SAC).

extract settlements. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1418 (3d Cir.1997).

Rule 9(b) may be satisfied by describing the circumstances of the alleged fraud with precise allegations of date, time, or place, or by using some means of injecting precision and some measure of substantiation into the allegations of fraud. Bd. of Trs. of Teamsters Local 863 Pension Fund v. Foodtown, Inc., 296 F.3d 164, 172 n. 10 (3d Cir. 2002). Stated another way, the plaintiff must plead the who, what, when, where, and how of the fraud. Institutional Investors Grp. v. Avava, Inc., 564 F.3d 242, 253 (3d Cir. 2009); see Bonavitacola Elec. Constr. v. Boro Developers, Inc., No, 01–5508, 2003 WL 329145, at *6 (E.D. Pa. Feb.12, 2003) (Baylson, J.).

"[H]owever, courts should be sensitive to the fact that application of [Rule 9(b)] prior to discovery may permit sophisticated defrauders to successfully conceal the details of their fraud. Accordingly, the normally rigorous particularity rule has been relaxed somewhat where the factual information is peculiarly within the defendant's knowledge or control." In re Burlington, 114 F.3d at 1418 (citations and quotation marks omitted). Thus, plaintiffs may plead certain factual allegations based "upon information and belief" but must allege that the necessary information lies within the defendant's control, and their allegations must be accompanied by a statement offsets upon which the allegations are based. In re Craftmatic Sec. Litig., 890 F.2d 628, 645 (3d Cir. 1989). Boilerplate and conclusory allegations will not suffice. In re Burlington, 114 F.3d at 1418.

### A. Discussion

#### 1. Breach of Contract (Count I)

To state a claim for breach of contract, a claimant need only allege: (1) the existence of a contract, including its essential terms; (2) a breach of duty imposed by the contract; and (3) damages from the breach. Ware v. Rodale Press, Inc., 322 F.3d 218, 225 (3d Cir. 2003) (quoting

4

CoreStates Bank, N.A. v. Cutillo, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)) (internal punctuation omitted).

GLD does not contest the validity of the contract, that it was breached, or that damages to Plaintiffs resulted from the breach. Instead, it claims, as it did in its prior Motion to Dismiss, that it is not liable for any breach because: (1) it was not a party to the modular home sales agreement; and (2) it was not a principal of Foremost, the actual party to the agreement.

Plaintiffs contend that at the time Plaintiffs entered into the sales agreement with Foremost, GLD had already purchased Foremost, thereby making GLD a "successor in interest" of Foremost. As a result, Plaintiffs assert that GLD was obligated to perform under the agreement.

As a general proposition, a party to a contract may not recover for breach of contract from an entity who is not a party to the contract. Moreover, the mere fact that Defendant GLD allegedly owns all of the stock of Foremost does not by itself make Defendant GLD liable for Defendant Foremost's contracts. See Phoenix Canada Oil Co. v. Texaco, Inc., 842 F.2d 1466, 1477 (3d Cir. 1988) ("One corporation whose shares are owned by a second corporation does not, by that fact alone, become the agent of the second company.").

Although a parent corporation is generally not liable for the actions of its subsidiary, United States v. Bestfoods, 524 U.S. 51, 61 (1998), a court may pierce the corporate veil and hold a parent liable for a subsidiary's breach of contract to prevent a fraud. There is a strong presumption in Pennsylvania against piercing the corporate veil. Wedner v. Unemployment Board, 449 Pa. 460, 464 (1972) ("[A]ny court must start from the general rule that the corporate entity should be recognized and upheld, unless specific, unusual circumstances call for an exception. . . . Care should be taken on all occasions to avoid making the entire theory of

corporate entity useless. Zubik v. Zubik, 384 F.2d 267, 273 (3d Cir. 1967)"). Also, the general rule is that a corporation shall be regarded as an independent entity even if its stock is owned entirely by one person or entity. College Watercolor Group, Inc. v. William H. Newbauer, Inc., 468 Pa. 103, 117 (1976).

To avoid the abuse of the corporate form, a court may "pierce the corporate veil," whereby it disregards the existence and protections of the corporate form and holds a corporation's shareholder liable for the corporation's debts. Kaplan v. First Options of Chicago, Inc., 19 F.3d 1503, 1520-21 (3d Cir. 1994). Courts consider the following factors in weighing whether to pierce the corporate veil: (1) gross undercapitalization, (2) failure to observe corporate formalities, (3) nonpayment of dividends, (4) insolvency of the debtor corporation, (5) siphoning of funds from the debtor corporation by the dominant stockholder, (6) nonfunctioning of officers and directors, (7) absence of corporate records, and (8) whether the corporation is merely a facade for the operations of the dominant stockholder. Pearson v. Component Tech. Corp., 247 F.3d 471, 484-85 (3d Cir. 2001). In the parent-subsidiary context, courts will pierce the corporate veil when "the parent so dominated the subsidiary that it had no separate existence." Id. at 484.

The, "mere ownership" of a subsidiary does not justify the imposition of liability on a parent company. Id.; cf. Clientron Corp. v. Devon IT, Inc., 154 F. Supp. 3d 132, 139 (E.D. Pa. 2015) (Baylson, J.) (this court holding that to pierce the corporate veil, a plaintiff must show that the controlled corporation acted as "puppet" of the owner or shareholder). Indeed, the party seeking to pierce the corporate veil must show that the parent has interfered with the subsidiary's operations in a way that surpasses the control exercised as an incident of ownership. Id. at 487; see also CMF Assocs., LLC v. Scout Media, Inc., No. 15-1250, 2015 WL 2125131, at *3 (E.D.

6

Pa. May 6, 2015) (granting parent company's motion to dismiss breach of contract claim where it was not a party to subsidiary's contract and plaintiff alleged only that the parent owned the subsidiary and no facts sufficient to support any of the Pearson factors); Zarichny v. Complete Payment Recovery Servs., Inc., 80 F. Supp. 3d 610, 619 (E.D. Pa. 2015) (same in TCPA case); Richardson v. CSS Indus., Inc., No. 08-3900, 2009 WL 2230761, at *3 (E.D. Pa. July 27, 2009) (same in employee benefits case).

Notwithstanding that Plaintiffs were on notice of the substantial deficiency in their first Amended Complaint concerning the need to allege facts and potentially add defendants to properly plead a "piercing the veil" theory, Plaintiffs still fail to allege any facts justifying veil-piercing, and instead lean exclusively on GLD's ownership of Foremost. As in CMF, Plaintiffs do not allege any facts supporting Pearson's eight veil-piercing factors. Further, Plaintiffs do not allege that GLD exercised any control over Foremost. As such, the breach of contract claim against GLD will be dismissed with prejudice.

### 2. Unjust Enrichment (Count II)

To state a claim for unjust enrichment, a plaintiff must allege: "(1) a benefit conferred on the defendant by the plaintiff; (2) appreciation of the benefit by the defendant; and (3) the defendant's acceptance and retention of the benefit 'under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value.'" Giordano v. Claudio, 714 F. Supp. 2d 508, 530 (E.D. Pa. 2010) (quoting Filippi v. City of Erie, 968 A.2d 239, 242 (Pa. Commw. Ct. 2009)).

Plaintiffs' Amended Complaint is inadequate yet again as to the first element. Plaintiffs again allege that "[o]n December 11, 2015, David Price hand delivered the initial 10% down payment of $17.569.00 and executed a partial lien waiver." Plaintiffs also allege yet again that "[o]n May 2, 2016 Plaintiffs' bank released their second down payment of $37,100.97 which

7

David Price hand delivered [sic] that same day." Both allegations are devoid of a crucial detail, which is required as part of the first element of an unjust enrichment claim, namely, <u>to whom payment was made</u> (i.e., who has the money). Without this necessary information, the Court is left unable to determine whether there is sufficient information to allege that "a benefit [was] conferred on the defendant."

Later in the SAC, Plaintiffs allege that "Plaintiffs fulfilled their contractual obligations, inclusive of the payment to defendants of over $54.000.00 in down payments." It is unclear which of the two Defendants was actually paid by Plaintiffs, and how Plaintiffs conclude that both Defendants received the payment. Thus, the Amended Complaint also fails as to the second and third elements of unjust enrichment.

### 3. Violation of the UTPCPL (Count III)

Plaintiffs base their UTPCPL claim on the statute's "catchall" provision, 73 Pa. Stat. § 201-2(4)(xxi), which requires Plaintiffs to plead the elements of common law fraud or otherwise allege deceptive conduct, subject to Fed. R. Civ. P. 9(b)'s particularity requirement. <u>Hunt v. United States Tobacco Co.</u>, 538 F.3d 217, 219 (3d Cir. 2008). The elements of common law fraud are:

> "(1) misrepresentation of a material fact;
> (2) scienter;
> (3) intention by the declarant to induce action;
> (4) justifiable reliance by the party defrauded upon the misrepresentation; and
> (5) damage to the party defrauded as a proximate result."

<u>Id.</u> at 225 n. 13. Plaintiffs alleging deceptive conduct,

> [f]irst . . . must allege facts showing a deceptive act, that is conduct that is likely to deceive a consumer acting reasonably under similar circumstances. Next, the plaintiff must allege justifiable reliance, in other words that he justifiably engaged in a detrimental activity because of the defendants' misrepresentation or deceptive conduct.

8

>Finally, the plaintiff must allege that this justifiable reliance caused ascertainable loss.

Seldon v. Home Loan Serv., Inc., 647 F.Supp.2d 451, 470 (E.D. Pa. 2009) (internal quotations and citations omitted).[4]

False advertising is among the "deceptive acts" prohibited under the UTPCPL. See 73 Pa. Cons. Stat. § 201-2(4)(v) & (ix). In order to state a claim for false advertising under the UTPCPL, a plaintiff must allege that (1) "a defendant's representation is false"; (2) "it actually deceives or has a tendency to deceive"; and (3) "the representation is likely to make a difference in the purchasing decision." Seldon v. Home Loan Servs., Inc., 647 F. Supp. 2d 451, 466 (quoting Fay v. Erie Ins. Grp., 723 A.2d 712, 714 (Pa. Super. 1999)).

Plaintiffs allege several misrepresentations in their SAC, including the following (all of which appeared, word-for-word, in the Amended Complaint:

> 6. During Plaintiffs' meetings with their initial sales representative they were verbally quoted a timeframe of approximately three months for a home to be constructed.
>
> 15. As of December 2015 Plaintiffs continued to be quoted a timeframe of three months for delivery of their new home.
>
> 19. Despite the promise of a three week turnaround for final plans, the plans were only ready for review on March 14, 2016.
>
> 41. From the onset of the transaction(s) at issue herein, Defendants misrepresented to Plaintiffs, either negligently or willfully, the status of the project, the timing of its performance, as well as every material portion of its duty to perform under the contract.

Plaintiffs' allegations as to Moving Defendants' misrepresentations are devoid of the details that Twombly and Iqbal require. To the extent Plaintiffs rely on the sales agreement itself

---

[4] A plaintiff alleging deceptive conduct may proceed without satisfying the particularity requirement of Federal Rule of Civil Procedure 9(b). Seldon v. Home Loan Serv., Inc., 647 F.Supp.2d 451, 469–70 (E.D.Pa.2009).

for their claim, that claim is duplicative of the breach of contract claim and independently subject to dismissal for the same reasons as the breach of contract claim. To the extent that Plaintiffs rely on allegations that unnamed sales representatives verbally provided quotes that their modular home would be completed in "approximately three months," the claim lacks requisite detail as well.

Plaintiffs' UTPCPL claims are also barred by either the economic loss or "gist of the action doctrine." See Werwinski v. Ford Motor Co., 286 F.3d 661, at 676, 680-81 (3d Cir. 2002) (holding that the economic loss doctrine applies to UTPCPL claims). The economic loss doctrine (and its closely related cousin, the "gist of the action" doctrine) bars claims under the UTPCPL that (1) stem from an underlying breach of contract ("intrinsic") and (2) are not "extraneous" (or "extrinsic") to that contract. Murphy v. State Farm Mut. Auto. Ins. Co., 2016 WL 4917597, at *5 (E.D. Pa. 2016). Representations concerning a party's performance under a contract or allegations that a defendant has not fulfilled contractual obligations are deemed "intrinsic" and will be barred by the doctrine. Whitaker v. Herr Foods, Inc., 198 F. Supp. 3d 476, 490 (E.D. Pa. 2016). Here, the misrepresentations alleged in Plaintiffs' Complaint have to do solely with Foremost's contractual obligations and failure to perform. They are not extraneous to the contract, and they certainly do not involve GLD merely because GLD was the alleged owner of Foremost.

## V.    Amendment Would Be Futile

The Third Circuit has emphasized that under Fed. R. Civ. P. 15(a), "leave to amend should be 'freely given when justice so requires,'" and "'a district court must permit a curative amendment unless such an amendment would be inequitable or futile.'" Toll Bros., Inc. v. Twp. of Readington, 555 F.3d 131, 144 n. 10 (3d Cir. 2009) (quoting Phillips v. Cnty. of Allegheny, 515 F.3d 224, 245 (3d Cir. 2008)); see also Foman v. Davis, 371 U.S. 178, 182

(1962) (cited by Plaintiffs for the proposition that Fed. R. Civ. P. 15's instruction to "freely give" leave to amend is a "mandate [] to be heeded.").

An amendment is considered futile if "the complaint, as amended, would fail to state a claim upon which relief could be granted." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997). Notably, the Third Circuit has stated that "although amendments are to be liberally granted, the district court may properly deny leave to amend where the amendment would not withstand a motion to dismiss." Centifanti v. Nix, 865 F.2d 1422, 1431 (3d Cir. 1989).

Here, Plaintiffs have had three opportunities to properly allege a case against Defendants, and they have repeatedly failed. For reasons expressed throughout this opinion, permitting Plaintiffs a fourth opportunity would be futile. Rhett v. New Jersey State Superior Court, 260 F. App'x 513, 516 (3d Cir. 2008).

## VI. Conclusion

For the reasons stated above, the Motion to Dismiss is GRANTED with prejudice.

An appropriate Order follows.

O:\CIVIL 17\17-145 Price v Foremost\Memo - MTD SAC.docx